UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GLORIA GRAVES HOLMES,

                            Plaintiff,

        - against -

BRENTWOOD UNION FREE SCHOOL
DISTRICT, THE BOARD OF EDUCATION
OF THE BRENTWOOD UNION FREE
SCHOOL DISTRICT, LES BLACK individually
and in his capacity as Superintendent, ANN
ROONEY QUINN, individually and in her
capacity as Principal of South Middle School,
and JOHN/JANE DOES 1 THROUGH 30,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM** and
**ORDER**

CV-03-1084 (TCP)(AKT)

PLATT, District Judge

         Defendants Brentwood Union Free School District *et al*.

(collectively "the District") move for summary judgment on all claims brought by

Plaintiff Gloria Grave Holmes ("Dr. Holmes" or "Plaintiff") pursuant to Rule

56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Plaintiff

Holmes, an African-American woman, alleges that Defendants violated her rights

under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title

VII") by refusing to promote her and by creating a hostile work environment on

the basis of her race and gender.  Plaintiff also brings claims under (i) the New

York Human Rights Law ("NYHRL"), Executive Law §§ 296 and 297, (ii) the

New York State Constitution, (iii) 42 U.S.C. § 1981, (iv) 42 U.S.C. § 1983, and

(v) 42 U.S.C. § 1985.  For the following reasons, Defendants' Motion for

Summary Judgment is **GRANTED in part** and **DENIED in part**.

Plaintiff brings a cross-motion to file a late notice of claim against Defendants. For the following reasons Plaintiff's cross-motion is **DENIED**.

## FACTUAL BACKGROUND

1. *The Parties*

Plaintiff was employed by the District as an English teacher in South Middle School from 1968-1999. (Affidavit of Gloria G. Holmes "Holmes Aff." ¶ 5.)

Defendant Brentwood School District is the governing body for certain schools located in the Town of Islip, New York. Defendant Les Black ("Black") was the Superintendent of the District at all relevant times. Defendant Ann R. Quinn ("Quinn"), was at all relevant times the principal of South Middle School. Defendants John and Jane Does are or were members of the Board of Education for the District during all relevant times. (Compl. ¶¶ 3-6.)

2. *Plaintiff's Work Record and Qualifications*

Plaintiff was a model employee during her thirty-one years of service with the District. Her supervisors consistently gave her excellent evaluations. (Pl.'s Mem. Opp. Defs.' Mot. Summ. J. ("Pl.'s Mem. Opp."), Ex. A.) Dr. Holmes also received numerous awards and commendations throughout her career. The District recognized Dr. Holmes' strong performance by giving her

the opportunity to serve in additional capacities as a curriculum consultant, a demonstration teacher, and a student teacher supervisor. Of note, Dr. Holmes, on her own initiative, designed a project in which her classes wrote letters to Fortune 500 companies describing South Middle School's poor technological equipment. In response, these companies donated $10,000 worth of new computer equipment to the school. (Holmes Aff. ¶¶ 9-17.)

Dr. Holmes also has an impressive record of professional development. While employed by the District, she earned a PhD in English from SUNY Stonybrook and received certifications in school administration and school district administration, which qualified her for administrative positions within the District.

### 3. *Plaintiff's Applications for Administrative Positions*

Between approximately 1993 and 1997, Dr. Holmes applied for a promotion to administrative positions on eleven (11) occasions. She had the necessary certifications for these positions (Holmes Aff. ¶ 29), but was denied a promotion each time. In her place, the District promoted mostly white male applicants, although one African-American was promoted as well as one Latino. (Holmes Aff. ¶ 29; Def.'s 56.1 Statement ¶¶ 24-38.)

Plaintiff's last application is the one in dispute in this lawsuit.[1] In

---

[1] Defendants point out that the first ten decisions refusing to promote Plaintiff are not actionable because they occurred more than 300 days before Plaintiff's filing of the charge of discrimination with the EEOC. Plaintiff does not contest this point. However, while the first ten decisions may be time-barred as separate causes of action, Plaintiff may still use them as evidence of Defendants'

1997, Plaintiff applied for a position as assistant principal of South Middle

School, the school in which she had taught for nearly thirty (30) years. Plaintiff

was one of fourteen individuals to apply for the position. On June 3, 1997, the

District sent Plaintiff a letter indicating her application for the position had been

received. A few days later, the District decided to fill the position with a

Caucasian man, Bruce Ramboli, who had been an assistant principal of an

elementary school in the District and requested a lateral transfer. After granting

Romboli's request, the District terminated the application process and no

applicants were interviewed. (Cohen Decl. Ex G.)

The District considers a number of factors when promoting an

employee to an administrative position, some of which are leadership skills,

teaching ability, and experience at the appropriate grade level. (Holmes Aff. ¶ 61;

Black Dep. at 147, 184.)

Mr. Romboli was an assistant principal of an elementary school

within the District before he was transferred to work as an assistant middle school

principal. (Def.'s 56.1 Statement ¶ 41.) He had little supervisory responsibility at

the middle school level - his administrative experience at that level was limited to

a position as an attendance teacher (or as Plaintiff explains, a truant officer).

At the time of the decision, Defendant Black and Assistant

Superintendant Michael Fasullo had not reviewed Plaintiff's extensive personnel

file, nor had Fasullo or Black observed Dr. Holmes in the classroom. Black had

---

intent behind the final decision.

only conducted a forty (40) minute interview of Plaintiff when she had applied earlier for another administrative position.

Plaintiff left the District in 1999.  She is now Chair of the Division of Education at Quinnipiac University in Connecticut.


4. *Plaintiff's Work Environment*

Plaintiff cites about eight instances of discrimination and harassment that occurred over her thirty-one year career to demonstrate that she was subjected to a hostile work environment.  In 1993, as part of her program for an administrative degree, Plaintiff was required to complete an internship. Plaintiff asked Defendant Quinn if she could intern within the South Middle School.  Ms. Quinn refused her request, even though it was the ordinary practice of the District to accommodate such internships.  Plaintiff did not file a complaint about the matter at that time.  (Def.'s 56.1 Statement ¶ 41.)

Dr. Holmes also states that the District rejected a proposal to set up a Black History Month Program; instead choosing to implement a "watered down" multicultural celebration.  (Holmes Aff. ¶ 71.)  Again, Holmes did not register a formal complaint.

Plaintiff briefly alleged other instances of "hostility", including: (i) the District refused to implement a diversity training program; (ii) the District failed to pay her a stipend during the years she acted as advisor to the Black History Club; (iii) Principal Quinn encouraged her to look for administrative

positions outside the District on four occasions; and (iv) she was assigned to teach a new subject, 9th grade, during the year she had to submit orals for completion of her doctorate. (Def.'s 56.1 Statement ¶¶ 46-53.)  Holmes did not register a formal complaint objecting to any of these decisions.

Dr. Holmes testified that she was subjected to one racial slur by an employee of the District during her thirty-one year career.

(Holmes Dep. at 121.)

5. *The District's Affirmative Action Policy*

The District has an Affirmative Active Policy in place, the purpose of which is to "maintain and/or increase the number of minority personnel in the Brentwood School District to be equivalent to the distribution of the minority student population within the District." (Cohen Aff., Ex. 1.)  The parties agree that during the 1996-97 school year, the District's student population was approximately 49.3% Hispanic; 28.8% White and 19.9% Black.  During the same year, approximately 90.6% of the School District's Principals were White and 86.1% of its Assistant Principals were White. (Compl. ¶¶ 20-21; Answer ¶¶ 20-21.)

6. *Administrative Proceedings*

On August 22, 1997, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  On September

3, 1998, the EEOC determined that there was reasonable cause to believe Defendants violated Title VII. Specifically, the Commission found that with regard to Plaintiff's 1997 application for the position of Assistant Principal, Mr. Romboli "had his administrative career orchestrated", and that his "transfer was apparently granted after [Plaintiff] had applied for the vacancy in question, possibly in an attempt to foreclose the advancement opportunity for [Plaintiff]." The EEOC also noted that Dr. Holmes had been "denied every other administrative position she applied for", and that "examination of the file fails to show any evidence to support [Defendants'] assertion that [Plaintiff] lacked the skills required for a successful candidate." (Cohen Aff., Ex. 5.) It should be noted that the EEOC made no finding that Plaintiff was subjected to a hostile work environment.

On December 17, 2002, Plaintiff received a right to sue letter from the EEOC. She filed this Complaint within 300 days as required. However, Plaintiff failed to file a Notice of Claim with the District, which is a condition precedent to filing State law charges against the District.

**PROCEDURAL HISTORY**

Plaintiff brought this Complaint on March 4, 2003, alleging violations of federal law, state law, and the New York State Constitution. Plaintiff demands relief including, *inter alia*, an award of compensatory and punitive damages as well as a permanent injunction directing defendants to cease

and desist discriminatory hiring. (Compl. at 11.)

Defendants filed their Motion for Summary Judgment on December 5, 2005. On the same day, Plaintiff filed their opposition as well as a Cross-Motion to file a late Notice of Claim.

## DISCUSSION

**A. Summary Judgment Standard**

Courts may grant summary judgment when the moving party demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford,* 217 F.3d 141, 150-51 (2d Cir. 2000). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1986).

In deciding summary judgment motions where, as here, the employer's intent is at issue, the Second Circuit has cautioned that "[b]ecause writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *See Gallo v. Prudential Residential Services, Limited*

*Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Keeping in mind these standards, this Court shall first consider Plaintiff's failure to promote and hostile work environment claims under Title VII, and then her other state and federal claims.

## B.  Title VII

### 1.  Failure to Promote

Title VII forbids an employer from intentionally discriminating against an employee because of that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (2006).  The three-step burden shifting analysis from *McDonell Douglas* is applicable in deciding a failure to promote claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  The plaintiff bears the initial burden, and must prove by a preponderance of the evidence a *prima facie* case of discrimination by showing that (1) she is a member of the protected class, (2) she applied for an available position, (3) she was qualified for the position, and (4) she was rejected under circumstances that give rise to an inference of discrimination. *Green v. Harris Publications, Inc*. 331 F. Supp. 2d 180, 187 (S.D.N.Y. 2004) (citing *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 (2d Cir. 2000)).  The burden of establishing a *prima facie* case is minimal. *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).

If plaintiff establishes a *prima facie* case, the burden shifts to the

employer to articulate a clear and specific non-discriminatory reason for the employment decision. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir. 1995). Assuming the defendant articulates such reason, the burden shifts back to the plaintiff to show that the employer's stated reason is merely a pretext for illegal discrimination. *See id.* If plaintiff is able to demonstrate any evidence that would permit a rational fact finder to infer that the employer's proffered reason is pretextual, summary judgment dismissing the claim is inappropriate. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

(a) Failure to Promote

Dr. Holmes has clearly demonstrated a *prima facie* case. Defendants concede that plaintiff is a member of a protected class, that she applied for a position as an assistant principal, and that she was qualified. (Def.'s Mem. at 12.) In dispute is whether Plaintiff was denied promotion under circumstances giving rise to an inference of discrimination.

The Second Circuit has held that an inference of discrimination may be found where someone outside the protected class was promoted instead of the Plaintiff. *Cf Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 (2d Cir. 1999). The Second Circuit also considers whether the plaintiff was more qualified than her replacement. *See Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (determining that an inference of discrimination existed in part because employer promoted less qualified African-American over White plaintiff). Here,

Dr. Holmes was a highly qualified member of the protected class, and an apparently less qualified White male was promoted instead of her. Thus, Dr. Holmes has shown an inference of discrimination, and thereby established a *prima facie* case.

(b) *The District's Defense*

Defendants' burden at this juncture is to present evidence, "which *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original). Here, Defendants' current nondiscriminatory reason is that once the position was laterally filled by Romboli, the District terminated the application process, and all fourteen other applications to the position, including Plaintiff's, were not reviewed. The District further argues that such lateral transfers take priority over promotions. Taken as true, a rational jury could conclude that the requested transfer was a nondiscriminatory reason for failing to promote Plaintiff.

(c) *Pretext*

Plaintiff bears the burden of showing Defendants' stated reason was merely a pretext for discrimination. This burden is not particularly stringent. Summary judgment may only be entered if no rational trier of fact could find the articulated basis for plaintiff's discharge to be a pretext for discrimination. *Sutera*

*v. Schering Corp*, 73 F.3d 13, 16 (2d Cir. 1995).

i.  Paper Qualifications

In determining whether an employer's nondiscriminatory reason was a pretext for illegal failure to promote, the Second Circuit compares the plaintiff's "paper" qualifications to the individual who was promoted. *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 102-103 (2d Cir. 2001).  In *Byrnie*, plaintiff, a sixty-four year old male applied for a position as an art instructor but a younger woman, with less experience, Esther Mancarella, was ultimately hired by the defendant school district.  Plaintiff had both a bachelors and a masters degree and over twenty (20) years experience teaching.  Mancarella had only a bachelors degree and twelve years experience. *Id*.  The Court, recognizing that "an employer's disregard . . . of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification", reversed the District Court's grant of summary judgment on plaintiff's failure to promote claim. *See id*.

Here, Dr. Holmes' paper qualifications, as measured by the Defendants, appear somewhat more impressive then Mr. Romboli's. Superintendent Black's deposition testimony gives us a general picture of the District's hiring criteria.  Black stated that "successful teaching experience" as well as having the appropriate certifications were the "prime qualifications that are necessary." (Black Dep. at 147.)  Dr. Holmes had the appropriate certifications.  She also had thirty-one years experience in teaching middle

school, during which she received consistently strong evaluations. Dr. Holmes

had gained supervisory experience as a student teacher supervisor, a

demonstration teacher, and a curriculum consultant. Thus, there is little doubt

that Dr. Holmes met the criteria as stated. On the other hand, Mr. Romboli,

though he was assistant principal of an elementary school for a number of years,

did not have plaintiff's extensive experience teaching or supervising at the middle

school level. While this Court has no basis to find that Mr. Romboli unqualified

for the position, the fact that Plaintiff's credentials appear somewhat superior has

probative value and weighs in favor of a finding of pretext.

Defendants' reliance on *Bickerstaff v. Vassar College*, 196 F.3d

435 (2d Cir. 1999) is misplaced. In *Bickerstaff*, plaintiff, a Black female, alleged

that the defendant University's denial of her tenure request constituted illegal race

and gender discrimination. The Second Circuit affirmed the District Court's

decision granting summary judgment to defendant, relying on plaintiff's poor

evaluations from her supervisors and students in making its determination.

*Bickerstaff* is clearly inapposite as the District has conceded that Plaintiff was

qualified to be assistant principal.

### ii. Subjective criteria

Despite Plaintiff's strong qualifications, Defendants decided not to

choose her in part because she performed poorly at an interview. (Black Dep. at

183.) While "there is nothing unlawful about an employer's basing its hiring

decision on subjective criteria, such as the impression an individual makes during

an interview[,] . . . an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion." *Knight v. Nassau County Civil Serv. Comm'n*, 649 F.2d 157, 161 (2d Cir. 1981). Here, the District seeks to justify it decision largely by subjective criteria. For instance, Superintendent Black stated that Plaintiff was unqualified because she appeared "humorless" and "lack[ed] a dynamic personality."

This evaluation is particularly suspect, because it does not appear credible. *See Byrnie*, 243 F.3d at 105 ("a subjective evaluation, besides being clear and specific, must also be honest.") Defendants met with Plaintiff for only forty (40) minutes. Not until Black's deposition testimony, did Defendants ever describe sense of humor as a hiring criteria. Moreover, the interview Black mentions was not for the assistant principal position in dispute, and thus, his observations should not be accorded much weight. Defendants also failed to use more objective criteria to make their decision. Neither Black nor Assistant Superintendent Fusillo had ever reviewed Plaintiff's personnel file or observed her in class.

In sum, the District's purported reliance on the forty (40) minute interview, rather than on the easily accessible objective criteria, weighs in favor of a finding of pretext. *See Byrnie*, 243 F.3d at 105 -106 (holding that employer's reliance on subjective criteria may raise a genuine issue of fact concerning whether defendant's proferred reasons are pretextual).

iii. Other factors

Defendants' nondiscriminatory reason may also be regarded as a pretext because their reasons have shifted over time. *See Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 97-98 (2d Cir. 1999) (citing *EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir. 1994) (holding that a jury issue on the question of pretext may be created when an employer offers inconsistent and varying explanations for its adverse employment decision)). The District argued before the EEOC that Plaintiff was unqualified. Yet in this motion, Defendants concede that she is qualified. They argue instead that their decision was based on Mr. Romboli's requested transfer. However, Defendants have submitted no evidence other than self-serving statements that lateral transfers were given priority over promotions. Moreover, the EEOC found that Romboli's transfer was granted after Plaintiff applied for the vacancy, "possibly in an attempt to foreclose the advancement opportunity for [Plaintiff]." (Cohen Aff., Ex. 5.)

Plaintiff's claims of pretext are backed by statistical evidence. *See Raskin v. Wyatt*, 125 F.3d 55, 67 (2d Cir. 1997) ("It is apodictic that statistical reports . . . may be admissible to support an inference of discrimination.") (Compl. ¶¶ 20-21; Answer ¶¶ 20-21.) Dr. Holmes submitted unrebutted evidence that as of 1997, while the District had a majority of non-white students, the administration was overwhelmingly white. The numbers run counter to the stated goal of the District's affirmative action policy to increase the number of "minority personnel in the Brentwood School District to be equivalent to the distribution of the minority student population within the District." (Cohen Aff., Ex. 1.)

Under the circumstances, a rational jury could find Defendants'
stated reason pretextual, and therefore, Defendants' Motion for Summary
Judgment on Plaintiff's claim for failure to promote must be denied.


2. Hostile Work Environment

In order to survive summary judgment on a claim of hostile work
environment, a plaintiff must produce evidence that "the workplace is permeated
with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe
or pervasive to alter the conditions of the victim's employment.'" *Harris v.
Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (some internal quotation marks
omitted). Isolated instances of harassment, unless very serious, do not rise to this
level. *See e.g. Kotcher v. Rosa & Sullivan Applicance Ctr., Inc.*, 957 F.2d 59, 62
(2d Cir. 1992). The relevant factors in determining whether a work environment
is hostile are "the frequency of the discriminatory conduct; its severity; whether it
is physically threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work performance."
*Harris*, 510 U.S. at 23. Finally, it is axiomatic that in order to establish a hostile
work environment based on plaintiff's status in a protected class, the conduct
must have occurred because of plaintiff's status. *See Brown v. Henderson*, 257
F.3d 246, 252 (2d Cir. 2001).

In *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002), plaintiff, a
female corrections officer, brought a claim for hostile work environment against

16

the New York State Department of Corrections ("DOC"), alleging twelve instances of discrimination. The Second Circuit held that the twelve incidents of purported harassment occurring over four years of employment were insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment. Although this Court is aware that "[t]here is no fixed number of instances that a plaintiff must endure to establish a hostile work environment" (*Id.* at 379), we note in passing that Dr. Holmes has alleged only about eight instances during her thirty-one year career.

In *Alfano*, the Second Circuit refused to consider incidents which involved DOC policy decisions that "lack[ed] a linkage or correlation to the claimed grounds of discrimination" (i.e. Alfano's supervisor recommended that she receive formal counseling). *See id.* at 377-378. Here, Plaintiff lists a number of events without showing their linkage to discrimination. For instance, Dr. Holmes complains that her supervisor suggested she look for administrative positions outside the District. Yet, she offers no evidence that such suggestion had any discriminatory motive. Plaintiff also alleges that she never received a stipend for serving as advisor to the Black History Club; however, she testified that she never requested one. Thus, some of plaintiff's allegations must be excluded because there is no basis to believe these acts "neutral on their face were in fact discriminatory." *See id.* at 378.

The *Alfano* Court also considered the severity of certain instances of sex discrimination. These instances included (i) Alfano's superior telling her

17

not to eat certain foods in a seductive manner, (ii) an arrangement of vegetables in Alfano's locker to resemble male genitalia, (iii) a notice posted on a bulletin board alluding to Alfano's penchant for oral sex. After comparing these incidents to those in other cases, the Second Circuit held that "the conduct in this case falls far short from an actionable claim." *Id.* at 380. Here, Holmes' complaints do not even approach the level of severity of Alfano's. Unlike Alfano, Holmes was not publically humiliated. Furhermore, Holmes testified that only once during her long career was she insulted by another employee of the District. (Holmes Dep. at 121.)

The one instance that may indicate illegal discrimination - that the District refused Plaintiff's request for an internship within the school, while allegedly granting similar requests made by others - is not of sufficient magnitude to demonstrate an environment "permeated with discriminatory intimidation, ridicule, and insult."[2] Accordingly, Defendants' Motion to Dismiss Plaintiff's Hostile Work Environment claim is Granted.

**C. Plaintiff's Cross Motion to file late Notice of Claims**

New York Education Law ("NYEL") § 3813 requires that a

---

[2] Defendants' decision not to promote Plaintiff, while evidence of discrimination, does not necessarily establish a claim for hostile work environment. *Cf Hernandez v. Data Systems Intern., Inc.*, 266 F. Supp. 2d 1285 (D. Kan. 2003) (denying defendant's motion for summary judgment on plaintiff's claim for failure to promote but finding "an absence of sufficient evidence to support the inference of severe or pervasive racial harassment."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305 (E.D.N.Y. 2003) (denying defendant's motion for summary judgment on plaintiff's retaliation claim but granting summary judgment on plaintiff's claim for hostile work environment).

written verified claim be presented to a school district within three months of the accrual of such claim.  The filing of the claim is a condition precedent to the commencement of an action against the district.  A failure to present a notice is a fatal defect. *Bucalo v. East Hampton Union Free School District*, 351 F. Supp. 2d 33, 35 (E.D.N.Y. 2005) (citing *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 60 N.Y.2d 539 (1983).

The statute also states that "[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim."  However, "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." NYEL § 3813 (2-a).  The statute of limitations for such a claim is one year. *Id.* § 3813(2-b)

Plaintiff failed to file any notice of claim against the District, and now seeks leave to file a late notice. (Pl.'s Mem. Opp. at 22.)  Because the cause of action accrued in 1997, and the statute of limitations ran in 1998, this Court does not have the discretion under NYEL § 3813 to grant Plaintiff leave to file state law claims.

Plaintiff cites to *Gulino v. New York City Board of Education*, 236 F. Supp. 2d 314, 327-328 (S.D.N.Y. 2002) *rev'd in part on other grounds*, 2002 WL 31887733 (S.D.N.Y. Dec. 26, 2002), in which the Court held that the interests of an entire class of Plaintiff's overrode the State's interest in receiving timely notice and allowed a late filing.  *Gulino* is inapposite.  As Plaintiff only brings claims on behalf of herself, her interest does not override that of the State.

Accordingly, Plaintiff's cross motion to file a late notice of claim is denied and her State law claims are dismissed.[3]

Moreover, because the State law claims have been dismissed, and individuals are not subject to liability under Title VII (*Wrighten v. Glowski*, 232 F.3d 119, 120) (2d Cir. 2000), the individual Defendants, Les Black and Anne Quinn, must be removed from this lawsuit.

**D.  Claims filed pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.**

The statute of limitations under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 actions in New York is three years from when the cause of action accrues.  The cause of action accrues when "plaintiff knows or has reason to know of the injury which is the basis of her action." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (internal citations omitted).  Plaintiff's cause of action accrued at the latest in 1997, and thus, the statute of limitations ran in 2000.  Plaintiff did not file this Complaint until 2003.

Plaintiff argues that the statute of limitations should be tolled because the administrative process took many years to complete.  Tolling of Title VII is governed by New York law, which "provides for tolling in limited circumstances."  A cumbersome administrative process is not among such

_____

[3]  To the extent Plaintiff's cited case *Bloom v. New York City Board of Education,* 2004 WL 639613 (S.D.N.Y. March 30, 2004) conflicts with this decision, we note that it is not controlling; rather, *Bucalo v. East Hampton Union Free School District*, 351 F. Supp. 2d 33, 35 (E.D.N.Y. 2005) is on point and controls.

circumstances. *See Szarejko v. Great Neck School Dist.*, 795 F. Supp. 81, 83 (E.D.N.Y. 1992). Moreover, Plaintiff need not have waited for the administrative process to end before bringing suit. She could have brought her claims under Title 42, and then added the Title VII claims after the EEOC completed its investigation.

Plaintiff cites two Second Circuit cases in support of its argument, neither of which is relevant. In *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1988) the Court tolled the statute of limitations because Defendant made a factual misrepresentation. Such conduct is not alleged here. In *Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995), the Second Circuit addressed the doctrines of tolling for duress and infancy, circumstances which do not exist in this case. Accordingly, Plaintiff's argument is unavailing and the claims brought pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 are hereby dismissed.

# CONCLUSION

For the foregoing reasons this Court hereby:

(a) **DENIES** Defendants' Motion for Summary Judgment with respect to Plaintiff's Title VII claim for failure to promote;

(b) **GRANTS** Defendants' Motion dismissing Plaintiff's Title VII claim for hostile work environment;

(c) **GRANTS** Defendants' Motion dismissing Plaintiff's state law claims and removes Defendants Black and Rooney from the case;

(d) **GRANTS** Defendants' Motion dismissing Plaintiff's claims brought pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985; and

(e) **DENIES** Plaintiff's cross-motion to file a late claim.

**SO ORDERED**.

/S/_____

Thomas C. Platt, U.S.D.J.

Dated: May 25, 2006

Central Islip, New York